**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
ESTATE OF EDWARD W. KNOSTER,  :
et al.,                             :      CIVIL ACTION NO. 01-3168 (MLC)
                                    :
     Plaintiffs,                    :
                                    :         MEMORANDUM OPINION
     v.                             :
                                    :
FORD MOTOR COMPANY,                 :
                                    :
     Defendant.                     :
_____:
```

**COOPER, District Judge**

Plaintiffs, the Estate of Edward W. Knoster, Irene Knoster, and Sylvia Rea (collectively, "plaintiffs"), commenced this action against Ford Motor Company ("Ford") for injuries sustained in a vehicular accident. (Dkt. entry no. 1, Compl. at 2, 4.) Plaintiffs assert, inter alia, design defect and failure to warn claims under the New Jersey Product Liability Act ("PLA"), N.J.S.A. §§ 2A:58C-1 to -11, as well as a violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. §§ 56:8-1 to -106. (Id. at 10-16, 18.)  Ford now moves for summary judgment in its favor pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Dkt. entry no. 206, Ford Br. at 1.)  Plaintiffs oppose the motion. (Dkt. entry no. 207, Pls. Br. at 1.)  The Court has considered the papers submitted by the parties and heard oral argument on December 12, 2008.  For the reasons stated herein, the Court will (1) grant the part of the motion seeking summary

judgment in Ford's favor on the specific product defect and failure to warn claims, and (2) deny the part of the motion seeking summary judgment in Ford's favor on the indeterminate product defect and CFA claims.

## BACKGROUND

This action arises out of a New Jersey vehicular accident that occurred in 1999, which took the life of Edward W. Knoster and injured Irene Knoster and Sylvia Rea.  (Compl. at 4.) Plaintiffs claim that the car in which they were driving, a 1993 Ford Taurus ("the Knoster vehicle"), suddenly and unexpectedly accelerated without driver input and crashed into a building. (Id.)  Plaintiffs allege that Ford is responsible for the accident and plaintiffs' resulting injuries because "a defective malfunction in the cruise control" caused the Knoster vehicle to unexpectedly accelerate.  (Id.)  Specifically, plaintiffs allege that there was a design defect in the electronic engine control, which caused spontaneous electrical signals and/or electromagnetic interference ("EMI") to interact with the speed control servo, open the throttle, and cause the sudden acceleration.  (See id. at 5, 14; Ford Br. at 4.)

A trial was held in this action.  The Court dismissed the CFA claim at the close of evidence, and the jury returned a verdict in favor of Ford on the design defect and failure to warn claims.  (Dkt. entry no. 128, Verdict Sheet.)  The Court entered

2

judgment in favor of Ford, from which plaintiffs appealed.  (Dkt.
entry no. 157, Judgment; dkt. entry no. 159, Amended Not. of
Appeal.)  On appeal, plaintiffs raised questions as to, <u>inter
alia</u>, the Court's jury instructions concerning the design defect
and failure to warn claims and the Court's dismissal of the CFA
claim.  <u>Estate of Knoster v. Ford Motor Co.</u>, 200 Fed.Appx. 106,
109 (3d Cir. 2006).  The Third Circuit Court of Appeals ("Court
of Appeals") affirmed the Court's judgment insofar as it
concerned the failure to warn claim, but reversed the Court's
judgment insofar as it concerned the design defect and CFA
claims.  <u>Id.</u> at 108.  The Court of Appeals determined that
plaintiffs were entitled to a jury instruction under section 3 of
the <u>Restatement (Third) of Torts: Products Liability</u> ("Section
3"), and that the PLA did not subsume plaintiffs' CFA claim.  <u>Id.</u>
at 114-16.  The design defect and CFA claims were remanded for
further proceedings.  <u>Id.</u> at 116.

Ford now moves for summary judgment on plaintiffs' design
defect, failure to warn, and CFA claims.  (Ford Br. at 1.)  Ford
argues, <u>inter alia</u>, that (1) plaintiffs cannot establish the
elements of the design defect claim, (2) the failure to warn
claim is barred by the affirmance of the Court of Appeals of this
Court's judgment in favor of Ford on that claim, and (3)
plaintiffs cannot satisfy the elements of the CFA claim.  (<u>Id.</u> at
7.)  Plaintiffs oppose the motion, arguing that genuine issues of

material fact remain with respect to the design defect, failure
to warn, and CFA claims.  (Pls. Br. at 1.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper if the
pleadings, the discovery and disclosure materials, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law.  Fed.R.Civ.P. 56(c).  The summary judgment movant bears the
initial burden of showing that there is no genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  Once the movant has met this prima facie burden, the
non-movant must set out specific facts showing that there is a
genuine issue for trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant
must present actual evidence that raises a genuine issue of
material fact and may not rely on mere allegations.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable
to the non-movant when deciding a summary judgment motion.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).  At the summary judgment stage, the Court's role is
"not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial."  Anderson, 477 U.S. at 249.  Under this standard, the

"mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II.  Design Defect Claim

### A.    Legal Standard for a Design Defect Claim

To make out a prima facie case of design defect, plaintiffs must prove that (1) the product was defective, (2) the defect existed when the product left the manufacturer's control, and (3) the defect proximately caused injuries to the plaintiffs, who were reasonably foreseeable or intended users of the product. Myrlak v. Port Auth. of N.Y & N.J., 723 A.2d 45, 52 (N.J. 1999). A product is defective if "it is not reasonably fit, suitable, or

5

safe for the ordinary or foreseeable purpose for which it is
sold." Id.  A plaintiff is not required to prove a specific
defect; rather the plaintiff only need show that "something was
wrong with the product." Id. (quotation and citation omitted);
see also Scanlon v. Gen. Motors Corp., Chevrolet Motor Div., 326
A.2d 673, 677 (N.J. 1974).  The mere occurrence of an accident,
however, is not enough to show a product defect.  Myrlak, 723
A.2d at 52.

There are three ways to prove the existence of a product
defect and that the defect existed while the manufacturer had
control over the product.  Id. at 52-53.  Plaintiffs may use
direct evidence, circumstantial evidence, or may negate other
possible and likely causes of the product failure for which
defendant is not responsible, which makes reasonable the
inference that the product defect existed at the time the
defendant controlled the product.  Id.; Jakubowski v. Minn.
Mining & Mfg., 199 A.2d 826, 830 (N.J. 1964).  Expert testimony
that "a product's design was defective by its very nature
establishes that the defect arose while in the control of the
manufacturer." Scanlon, 326 A.2d at 678.

Circumstantial evidence relating to the "age and prior usage
of the product in relation to its expected life span, durability
and effective operability without maintenance" is critical in
determining whether to allow an inference that the product defect

existed while in the manufacturer's control.  Id.  It is
generally more difficult to prove that a product defect existed
in the manufacturer's control when the product is older.  Myrlak,
723 A.2d at 52; Scanlon, 326 A.2d at 678.  However, the "age of
the product alone may not preclude a finding that the product was
defective" in the manufacturer's control.  Myrlak, 723 A.2d at
52-53.  Whether the product was defective while in the
manufacturer's control may be established where the product is
such that the jury could "infer that in the normal course of
human experience an injury would not have occurred at this point
in the product's life span had there not been a defect
attributable to the manufacturer."  Scanlon, 326 A.2d at 679; see
also Myrlak, 723 A.2d at 53.

        A plaintiff may also prove that the product defect existed
in the manufacturer's control by negating other possible causes
of the product failure that are not the manufacturer's
responsibility.  Scanlon, 326 A.2d at 679.  A plaintiff must show
that it is more probable than not that the cause of the accident
was one for which the defendant is responsible.  Jakubowski, 199
A.2d at 831.  It is not necessary for a plaintiff to discount all
possible causes, only the most likely causes.  Myrlak, 723 A.2d
at 53. Depending on the product's complexity, "this type of proof
may require the testimony of an expert witness as to the various
possible explanations for the mishap."  Scanlon, 326 A.2d at 679.

A product defect also may be proved using a res ipsa loquitur-like inference, known as the "indeterminate product test." Myrlak, 723 A.2d at 55-56. The indeterminate product test is provided for by Section 3, and is used only where a plaintiff cannot prove a specific product defect. Id. Section 3, which was adopted in Myrlak, provides:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
> (a) was of a kind that ordinarily occurs as a result of a product defect; and
> (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

Restatement (Third) of Torts: Products Liability § 3 (1997). Both elements of Section 3 "can be satisfied through direct and circumstantial evidence as well as by evidence negating other causes for the failure of the product for which the defendant would not be responsible." Myrlak, 723 A.2d at 55-56.

Expert testimony is required in a design defect case where the subject matter "falls outside of the common knowledge of the factfinder and depends on scientific, technical, or other specialized knowledge." See Jerista v. Murray, 883 A.2d 350, 364 (N.J. 2005); see also Butler v. Acme Mkts., Inc., 445 A.2d 1141, 1147 (N.J. 1982) (stating that expert testimony is necessary where "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment");

<u>Macri v. Ames McDonough Co.</u>, 512 A.2d 548, 552 (N.J. App. Div. 1986) (requiring expert testimony where subject matter is such that jurors of common judgment and experience cannot "make a determination without the benefit of the information and opinions possessed by a person with specialized knowledge").  Where an "average juror can deduce what happened without resort to scientific or technical knowledge, expert testimony is not mandated."  <u>Jerista</u>, 883 A.2d at 365.

The Court of Appeals determined that, based upon the evidence presented at trial, plaintiffs were entitled to a Section 3 jury instruction.  <u>Estate of Knoster</u>, 200 Fed.Appx. at 114-15.  The Court of Appeals stated that the evidence of the Knoster vehicle's sudden acceleration without driver input, if believed, shows that the Knoster vehicle was self-evidently defective.  <u>Id.</u> at 114 ("'Common experience' teaches that so manifest a product failure would not ordinarily occur in the absence of some defect.").  Thus, the Court of Appeals concluded that evidence that the Knoster vehicle suddenly accelerated without any driver input satisfies the first element required for a Section 3 instruction.  <u>See</u> <u>id.</u>

The Court of Appeals determined that plaintiffs also satisfied the second element by producing evidence, through Irene Knoster's and Sylvia Rea's testimony, that the Knoster vehicle suddenly and spontaneously accelerated without any driver input

and, through the expert testimony of Samuel Sero ("Sero"), that it did so as a result of its design.  Id.  This evidence, if believed, supports a jury's conclusion that plaintiffs excluded other possible causes of the accident.  Id.  Therefore, the Court of Appeals held "that the Knosters' evidence may permit an inference of defectiveness under section 3."  Id. at 114-15.

### B.   Application of the Legal Standard

#### 1.   Specific Product Defect

Plaintiffs have advised this Court, after the case was remanded from the Court of Appeals, that on retrial they will not use expert testimony to establish the alleged cruise control-related defect.  (See Ford Br., Ex. U.)  In other words, they have withdrawn Sero as a prospective expert witness.  Ford argues that plaintiffs are required to produce expert testimony if they seek to prove a specific defect in the Knoster vehicle.  (Ford Br. at 10.)  Ford asserts that plaintiffs' specific defect theory - that EMI caused the sudden acceleration - will involve "engineering and science-based issues beyond the comprehension of lay people."  (Id. at 10-11.)  In response, plaintiffs argue that they are not required to use an expert to establish a specific defect.  (Pls. Br. at 17-19.)

The Court finds that summary judgment is appropriate on plaintiffs' specific design defect claim because plaintiffs, on remand, do not offer expert testimony regarding the alleged

specific product defect.  Expert testimony is required where the
subject matter is outside the common knowledge and experience of
an average juror.  See Jerista, 883 A.2d at 364; Butler, 445 A.2d
at 1147.  Here, the specific defect alleged involves the Knoster
vehicle's speed control system, specifically interaction between
EMI and the speed control servo.  (See Compl. at 5, 14; Ford Br.
at 4.)  A car's speed control system, including its electronic
components, is a subject matter beyond the common knowledge and
experience of an average juror, and thus, expert testimony is
required.  See Roberts v. Detroit Diesel Corp., No. L-1602-04,
2007 WL 1038986, at *3 (N.J. App. Div. Apr. 9, 2007) (determining
that marine diesel engines are complex instrumentalities
requiring expert testimony); Lauder v. Teaneck Vol. Ambul. Corps,
845 A.2d 1271, 1277 (N.J. App. Div. 2004) (finding the locking
mechanism on a gurney sufficiently complex as to require expert
testimony); Rocco v. N.J. Transit Rail Operations, Inc., 749 A.2d
868, 879-80 (N.J. App. Div. 2000) (concluding that expert
testimony was needed to prove defective design of an emergency
unlock mechanism on railroad car doors).

Plaintiffs must also prove that the specific defect, if it
existed, caused this particular accident.  See Myrlak, 723 A.2d
at 52 (requiring plaintiff to prove product defect caused
plaintiff's injury).  Whether a defect in the Knoster vehicle's
speed control system actually caused this accident is also beyond

the common knowledge and experience of an average juror.  Thus, to avoid speculation by the jury, expert testimony is necessary in this action to establish a specific product defect and that the specific product defect caused this accident.  See Kelly v. Berlin, 692 A.2d 552, 558 (N.J. App. Div. 1997) (noting that jurors "should not be allowed to speculate without the aid of expert testimony in an area where laypersons could not be expected to have sufficient knowledge or experience" (quotation and citation omitted)).  Because plaintiffs have not provided expert testimony, they have failed to raise a genuine issue of material fact, and summary judgment in favor of Ford on the specific product defect claim is appropriate.

### 2. Indeterminate Product Defect

Ford also asserts that plaintiffs cannot establish an indeterminate product defect without expert testimony.  (Ford Br. at 10-11.)  Ford argues that, absent expert testimony, plaintiffs cannot prove an indeterminate product defect because they cannot sufficiently negate other possible causes of the defect, and thereby make it reasonable to infer that the defect existed while Ford had control over the product. (Id. at 12, 16.)  Ford contends that plaintiffs cannot exclude other possible causes of the defect, such as improper maintenance or some other defect that occurred after Ford sold the Knoster vehicle.  (Id. at 18.)  Ford argues that such a showing is required for a Section 3 jury

12

instruction where, as here, plaintiffs lack direct evidence of a product defect.  (Id. at 16.)[1]  Ford also contends that plaintiffs' indeterminate defect theory is unscientific, unreliable, and speculative, and therefore should be precluded. (Dkt. entry no. 209, Ford Reply Br. at 5.)

Plaintiffs respond by arguing that they satisfy both elements required for a Section 3 jury instruction.  (Pls. Br. at 9, 12.)  Plaintiffs contend that the Court of Appeals has already determined that their evidence satisfies the first element.  (Id. at 9.)  To meet the second element, plaintiffs primarily rely on a February 8, 1988 letter from Ford to the National Highway Traffic Safety Administration ("Ford letter") in which, plaintiffs argue, Ford admits that only two things can cause substantial throttle opening, a cruise control fault or driver error.  (Id. at 14.)  Plaintiffs further assert that expert testimony is not necessary to satisfy the indeterminate defect

---

[1]  Ford also argues that plaintiffs have not satisfied the first element required for a Section 3 jury instruction.  (Ford Br. at 12-15.)  However, the Court of Appeals addressed this issue and determined that plaintiffs' evidence that the Knoster vehicle accelerated without driver input is sufficient to satisfy the first element.  Estate of Knoster, 200 Fed.Appx. at 114. This evidence consists of Irene Knoster's and Sylvia Rea's testimony.  (See Pls. Br., Ex. 1, 2.)  This evidence is unaffected by the fact that Sero will no longer be called as a witness.  (See Ford Br., Ex. U.)  Thus, the Court of Appeals' conclusion still controls - plaintiffs have sufficient evidence to satisfy the first element necessary for a Section 3 jury instruction.

test.  (Id. at 9-11, 15-17.)  Plaintiffs also contend that several documents produced by Ford, including the Ford letter, raise an issue of fact as to the existence of a design defect in the Knoster vehicle's cruise control system.  (Id. at 18-19.)

The Court finds that summary judgment is not appropriate on the indeterminate defect claim because plaintiffs have raised a genuine issue of material fact as to the existence of a product defect while Ford had control of the Knoster vehicle.  The indeterminate defect theory requires plaintiffs to establish that the product defect existed during the time Ford controlled the product.  See Myrlak, 723 A.2d at 52-53, 55.  Here, plaintiffs have sufficiently negated other likely causes of the accident for which Ford would not be responsible such that a reasonable jury could infer that the product defect existed in Ford's control.

Plaintiffs are required only to negate other likely causes of the accident, not all possible causes.  See id. at 53; Scanlon, 326 A.2d at 682-83.  Here, Irene Knoster's and Sylvia Rea's testimony, if believed, negates operator error as a possible cause of the accident.  See Estate of Knoster, 200 Fed.Appx. at 114.  Also, at least at the prior trial, Ford did not argue that floor mats, misuse, or faulty maintenance played any role in the accident.  (Pls. Br. at 14; see also Ford Br.) Thus, a jury could reasonably find that plaintiffs have negated

14

other  likely causes of the accident for which Ford would not be responsible.[2]

Plaintiffs, using documents produced by Ford, have also proffered evidence that, if believed, would allow the jury to infer that a defect in the speed control system existed in Ford's control.  (Pls. Br. at 13-15.)  Plaintiffs rely on the Ford letter, which states that "only the vehicle speed maintenance control system or 'cruise control system' . . . is capable in the event of 'failure or malfunction' of opening the throttle a substantial amount without driver input."  (Id., Ex. 16, 2-8-88 Letter at 3.)  The Ford letter also identifies other malfunctions that could cause a substantial increase in engine speed and power output, including (1) "a damaged or missing seal in the speed control servo assembly," (2) structural failure or malfunction of "certain other components, such as cracking of the intake manifold or an intake manifold core plug being displaced," or (3) any structural failure or malfunction that allows air into the engine.  (Id.)  Further, Plaintiffs identified a 1992 report pertaining to a Taurus in which Ford responded to a customer complaint that the vehicle's accelerator moved down by itself.  (Pls. Br. at 14; id., Ex. 7.)  In response to the complaint, Ford

---

[2]  Ford did argue at the prior trial that driver error caused the accident.  That argument is available to Ford in the retrial, as well as any inferences or conclusions available from the physical evidence both pre- and post-accident.

acknowledged that "concern has to be speed control-related since the accelerator pedal is allegedly moving." (Id., Ex. 7.)  This document recognizes that the speed control is a possible cause of the acceleration.  Thus, plaintiffs have raised a genuine issue of material fact as to whether the Ford documents combined with plaintiffs' testimony sufficiently negate other likely causes of the Knoster vehicle's sudden acceleration to support an inference that the product defect existed while in Ford's control.[3]

## III. Failure to Warn Claim

Ford argues that the affirmance by the Court of Appeals of this Court's judgment in favor of Ford on the failure to warn claim is the "law of the case and cannot be altered on remand of Plaintiffs' other claims." (Ford Br. at 19.)  Ford argues that plaintiffs cannot re-assert this claim on remand using a different warning theory. (Id.)  Plaintiffs respond by arguing that their failure to warn claim is not barred because the Court of Appeals "did not dismiss the Knosters' failure to warn claim as a matter of law." (Pls. Br. at 19.)  Plaintiffs also assert that the affirmance by the Court of Appeals in Ford's favor on

---

[3]  There is no per se rule that plaintiffs need expert testimony to prove their indeterminate product defect claim.  See Jerista, 883 A.2d at 363-65 (rejecting per se requirement of expert testimony for a res ipsa inference).  The Court rules that here, plaintiffs have produced sufficient evidence without expert testimony to raise a genuine issue of material fact as to the existence of a product defect during the time Ford controlled the Knoster vehicle.

the failure to warn claim was limited to the specific defect theory and should not bar their general failure to warn theory. (Id. at 20.)

An appellate court's mandate establishes law binding further proceedings by a lower court subject to the appellate court's authority.  In re Chambers Dev. Co., Inc., 148 F.3d 214, 224 n.8 (3d Cir. 1998).  "It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal."  Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985).  The trial court must "implement both the letter and spirit of the mandate," and take account of "the appellate court's opinion and the circumstances it embraces."  Id.  When an appellate court "reverses a judgment and remands for further consideration of a particular issue, leaving other determinations of the trial court intact, the unreversed determinations of the trial court normally continue to work an estoppel."  Cowgill v. Raymark Indus., Inc., 832 F.2d 798, 802 (3d Cir. 1987); see also Skretvedt v. E.I. DuPont de Nemours, 372 F.3d 193, 203 n.13 (3d Cir. 2004).  Thus, when the "appellate court affirms in part and reverses in part, all issues necessarily disposed of in the affirmance become law of the case even though the case is remanded for proceedings on other issues."  Cowgill, 832 F.2d at 802.

17

This Court finds that summary judgment in Ford's favor is appropriate on the failure to warn claim because the claim is barred by the mandate and opinion of the Court of Appeals affirming this Court's judgment in Ford's favor on the failure to warn claim.  Plaintiffs, on appeal, raised the issue of whether the Court erred in limiting the scope of Ford's duty to warn to the design of the cruise control system.  Estate of Knoster, 200 Fed.Appx. at 109, 112.  Plaintiffs argued that, in response to a jury question, this Court should have instructed the jury that the failure to warn question could refer to a general warning about sudden acceleration no matter what the cause.  Id. at 112. The Court of Appeals concluded that this Court correctly responded that the jury should base its answer only on the specific design of the cruise control system.  Id.  Thus, the Court of Appeals considered whether the jury should have been instructed on Ford's general duty to warn of sudden acceleration no matter what the cause, and determined that the record did not warrant such an instruction.  Id. at 112-13.

The Court of Appeals affirmed the part of this Court's judgment on the jury verdict that was in favor of Ford on the failure to warn claim under the PLA.  Id. at 113.  The Court of Appeals did not remand the part of the judgment concerning the failure to warn claim for further proceedings, nor did it qualify its affirmance in any way, even though it remanded for further

18

proceedings on issues including the indeterminate defect theory of product liability.  Id.  Thus, the disposition by the Court of Appeals of the failure to warn claim is binding on this Court in its further proceedings.  See Bankers Trust Co., 761 F.2d at 949-50.  The affirmance of the part of the judgment concerning the PLA failure to warn claim remains undisturbed even though the Court of Appeals issued a remand as to other claims for further proceedings.  See Cowgill, 832 F.2d at 802.  The Court holds that the affirmance of the part of the judgment concerning the failure to warn claim is the law of the case, and bars re-litigation of plaintiffs' failure to warn claim on remand.  See id. (noting that "absent extraordinary circumstances, litigants should not be permitted to relitigate issues that they have already had a fair opportunity to contest").

**IV.  CFA Claim**

**A.  Legal Standard for a CFA Claim**

The CFA protects consumers from deception and fraud in the sale or advertisement of merchandise.  Turf Lawnmower Repair, Inc. v. Bergen Rec. Corp., 655 A.2d 417, 428 (N.J. 1995).  The CFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent

performance of such person as aforesaid, whether or not
any person has in fact been misled, deceived or damaged
thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2.  To state a claim under the CFA, a plaintiff

must establish (1) a defendant's unlawful practice, (2) an

ascertainable loss, and (3) a causal relationship between the

unlawful conduct and the ascertainable loss.  Int'l Union of

Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co., Inc.,

929 A.2d 1076, 1086 (N.J. 2007).  The "capacity to mislead is the

prime ingredient of all types of consumer fraud."  Cox v. Sears

Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).

There are three categories of unlawful practices under the

CFA: affirmative acts, knowing omissions, and regulation

violations.  Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365

(N.J. 1997); Cox, 647 A.2d at 462.  Unlawful affirmative acts

consist of unconscionable commercial practice, fraud, deception,

false promise, false pretense, and misrepresentation.  Thiedemann

v. Mercedes-Benz USA, LLC, 872 A.2d 783, 791 (N.J. 2005).  Intent

is not a required element where the unlawful practice is an

affirmative act.  Cox, 647 A.2d at 462.  Where the unlawful

practice is an omission, however, intent is a required element,

and a plaintiff must also show the defendant acted knowingly.

Id.; Miller v. Am. Fam. Publs., 663 A.2d 643, 647 (N.J. App. Div.

1995).  Where the unlawful affirmative act consists of an

"unconscionable commercial practice," the standard for

20

unconscionability is a "lack of good faith, honesty in fact and observance of fair dealing."  Cox, 647 A.2d at 462 (quotation and citation omitted).

The Court of Appeals did not address the merits of plaintiffs' CFA claim.  See Estate of Knoster, 200 Fed.Appx. at 115-16.  Rather, the Court of Appeals determined only that the PLA does not subsume plaintiffs' CFA claim.  Id. at 116.[4]  The Court of Appeals reversed this Court's dismissal of the CFA claim and remanded the claim for further proceedings.  Id.

**B.   Application of the Legal Standard**

Ford argues that plaintiffs have not produced any evidence of specific misrepresentations or omissions Ford made concerning the Knoster vehicle's cruise control system, or that Ford acted with intent in making the alleged omissions.  (Ford Br. at 25-26;

---

[4]  In a supplemental letter brief, Ford argues that two recent New Jersey state court decisions, Sinclair v. Merck & Co., Inc., 948 A.2d 587 (N.J. 2008) and McDarby v. Merck & Co., Inc., 949 A.2d 223 (N.J. App. Div. 2008), certification granted in part by 2008 N.J. LEXIS 1540 (N.J. Oct. 3, 2008), and certification denied by 2008 N.J. LEXIS 1591 (N.J. Oct. 3, 2008), compel a finding that the PLA subsumes plaintiffs' CFA claim.  (Dkt. entry no. 211, Ford Letter 7-30-08.)  Ford's argument is unavailing. Neither case changes the critical fact that economic damages for destruction of the product are not recoverable under the PLA. See Sinclair, 948 A.2d at 594 (noting that the PLA defines "harm" to include "physical damage to property, other than to the product itself"); McDarby, 949 A.2d at 278 (emphasizing that the PLA's definition of "harm" covers the economic harm involved). Thus, the Court of Appeals' conclusion that the PLA does not subsume plaintiffs' CFA claim is unaffected by these two cases. See Estate of Knoster, 200 Fed.Appx. at 116.

Ford Reply Br. at 13.)  Further, Ford asserts that there is no
evidence of a causal nexus between the alleged unlawful practice
and plaintiffs' loss. (Ford Br. at 26-27; Ford Reply Br. at 13.)

Plaintiffs argue that Ford committed an unconscionable
business practice by failing to warn plaintiffs that the Knoster
vehicle could accelerate suddenly without driver input.  (Pls.
Br. at 25-26.)  Plaintiffs also contend that Ford's knowledge of
the Knoster vehicle's defect at the time of sale can be inferred.
(Id. at 26.)  Thus, according to plaintiffs, a jury question
exists as to whether Ford "(1) committed an 'unconscionable
commercial practice' or (2) made misrepresentations with the
intent that its consumers rely upon those misrepresentations."
(Id. at 25-26.)  Furthermore, plaintiffs contend that they
sustained an ascertainable loss in the market value of the
Knoster vehicle that was damaged in the accident.  (Id. at 26-
28.)  Plaintiffs argue that it is "self-evident" that the product
defect caused damage to the Knoster vehicle.  (Id. at 28.)

The Court finds that summary judgment in Ford's favor is
inappropriate on the CFA claim because plaintiffs have raised a
genuine issue of material fact as to whether Ford committed an
unlawful practice.  Plaintiffs allege that Ford committed an
unlawful practice by failing to provide a warning that the
Knoster vehicle could suddenly accelerate without driver input.
(Pls. Br. at 26.)  This failure to provide a warning is an

22

omission under the CFA, and therefore requires proof of knowledge and intent.  See Cox, 647 A.2d at 462; Miller, 663 A.2d at 647. Plaintiffs have produced sufficient evidence, including the Ford documents acknowledging that a defect in the speed control system could cause sudden acceleration without driver input and instructing Ford shop technicians how to handle a sudden acceleration event, from which a jury could reasonably infer that Ford acted with knowledge and intent in failing to provide a warning.  (See Pls. Br., Ex. 3, 7, 11, 16.)

There is also a genuine issue of material fact as to the causal connection between the alleged omission and plaintiffs' damages.  Plaintiffs presented evidence that Irene Knoster read the owner's manual for the Knoster vehicle and would have read the information and instructions on how to handle a sudden acceleration event if such information had been included in the owner's manual.  (See Pls. Br. at 2; id., Ex. 1 at 27.)  Thus, there is a genuine issue of material fact as to whether Irene Knoster's lack of information on how to handle a sudden acceleration event, which resulted from Ford's omission of this information, caused the accident in which the Knoster vehicle sustained damage.  Therefore, summary judgment on plaintiffs' CFA claim is inappropriate at this time.

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will (1) grant the part of the motion seeking summary judgment in Ford's favor on the specific product defect and failure to warn claims, and (2) deny the part of the motion seeking summary judgment in Ford's favor on the indeterminate product defect and CFA claims.  The Court will issue an appropriate order and judgment.


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge


Dated:    December 17, 2008

24